**In re Glenna M. SNYDER, Debtor.**

**Bankruptcy No. 85–00382E.**
**Motion No. 85–376E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 11, 1986.

Edith Benson, Franklin, Pa., for debtor.

Peter M. Glaubach, Franklin, Pa., Trustee.

Max P. Gabreski, Oil City, Pa., for Signal Consumer Discount Co.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

The matter before the Court is the Debtor's Motion to Avoid a Non-Possessory, Non-Purchase Money Security Interest in a mobile home (the "Motion"). The lienholder is Signal Consumer Discount Company ("Signal"). The Debtor seeks to avoid the lien under Bankruptcy Code § 522(f)(2)(A). Debtor argues that the mobile home is "... household furnishings, household goods ..." as those terms are used in the cited section so that the non-possessory, non-purchase money security interest may be avoided by the Debtor in order to obtain her exemption.

### 1. Opening the Default Judgment

Reaching the above issue is dependent upon whether we should open our default judgment entered against Signal for failure to timely respond to Debtor's Motion.

Debtor's bankruptcy case was filed October 7, 1985. Debtor's Motion was filed October 11, 1985; the Order for service of the Motion requiring a response was issued October 15, 1985 and was served by mail on Signal on October 16, 1985. No response to the Motion was made, and a certificate of service having been filed, a judgment by default was entered November 6 and docketed November 8, 1985. The first meeting of creditors was held November 20, 1985. On December 4, 1985, Signal by its counsel, filed its motion to open the default order and to set it aside. After notice, a hearing was held January 7, 1986, at which the reason given by counsel for Signal for the delay in response was that the papers which were mailed to Signal looked like ordinary bankruptcy papers and the Signal personnel did not recognize them as the commencement of a lawsuit seeking to wipe out its lien. Debtor opposes the reopening of the default order which was entered and asserts that, by lack of diligence, Signal has lost its right to have its day in court.

■ The Court will grant Signal's motion to reopen the default order entered October 15, 1985. The Debtor's Motion for Lien Avoidance, and the Court's Order requiring an answer, were served only nine days after the case was filed. The Court notes from the docket that the Order and notice fixing the first meeting of creditors was issued October 23, 1985. Hence, at the time the Signal business office received the Motion, it had not even received notice that there was a bankruptcy. The trustee's proceeding memo of the § 341 meeting was filed December 3, 1985 indicating that Signal was represented at the § 341 meeting held November 20, 1985. Signal's motion to open the default order was filed December 4, 1985, which was two weeks after the § 341 meeting.

Motions involving substantial property rights are necessarily processed through bankruptcy courts at a speed not customary in other courts. Also, there are fewer safeguards built into the system than in

other court systems. Debtor's motion, for example, is in essence the commencement of a lawsuit to deprive Signal of what is, under the law of Pennsylvania, a valid and unimpeachable lien. If such a lawsuit were brought in the Common Pleas Courts of Pennsylvania, a complaint would be required. Service under the Pennsylvania Rules of Civil Procedure would be required, with a twenty day response, and if there were no response, an additional notice would be required indicating that if nothing were done within ten days, a default judgment would be taken against the defendant. Also, the initial complaint would be accompanied by a notice to the defendant, who is clearly identified *as a defendant* and informed that it is being sued in court, that it should take the paper to its lawyer, and that if it fails to do so, it may lose substantial rights. No such notice was provided in the within case, nor is it required by the Bankruptcy Rules.

Since the events above mentioned, this district has adopted Local Bankruptcy Rules, including Rule 9013.1F, which have required an additional sub-caption showing the debtor as the "Movant," "Petitioner" or "Applicant" and showing Signal as the "Respondent" so as to "conform substantially to official form 34." Official form 34 is designed for use in "adversary" matters, and has the salutary characteristic that it notifies the recipient at a first glance, in fact it shouts, that there is someone "*vs.*" someone else.

Here, however, Debtor's motion to avoid lien had, as its caption, simply "In re: Glenna M. Snyder, Debtor." No mention was made that it was the commencement of a proceeding in which Glenna M. Snyder was moving against Signal.

This Court's routine order for service, issued by the Bankruptcy Clerk's office, simply followed the caption of the Debtor's motion. Hence, there was nothing in the papers served upon Signal indicating that Signal was a defendant.

The body of the Debtor's Motion was also not illuminating. Assuming that Signal's office staff did read carefully the prayer for relief set forth in Debtor's motion, the import of that "pleading" would not be apparent to those laymen. The prayer for relief reads as follows:

"WHEREFORE, Debtor prays for an order for the cancellation and avoidance of the security interest in their personal and household goods, and for such additional or alternative relief as may be just and proper."

Even paragraph 6 of the Debtor's motion might not be too helpful:

"6. The existence of Signal's lien on debtor's household and personal goods impairs exemptions to which the debtor would be entitled under 11 U.S.C. § 522(b)."

Such language is insufficient to notify a layman clerk in Signal's office that the lien which it held upon Debtor's mobile home (which is nowhere mentioned in those paragraphs) is under attack and must be defended within a prescribed time. While there is no rule specifying the content of such a "motion" under the Bankruptcy Rules, litigants must recognize that such a "motion" is, in reality and substance, a pleading initiating substantial litigation and should be drafted with sufficient specificity to advise the adverse party what relief is being sought and why. Thus, while the lack of specificity of Debtor's Motion is not violative of the Rules, a default judgment entered after 15 days because the recipients did not understand the import of the pleading cannot withstand a test of fairness.

Under these circumstances, we cannot say that Signal's employees were so careless that Signal ought to be subjected to a default judgment. Certainly, diligence is shown in that within two weeks after the first meeting of creditors, Signal, through its counsel, filed its motion to open the default judgment against it.

This case stands as a warning that the procedures employed by the Court under Bankruptcy Rule 9013 in processing and adjudicating "contested" matters swiftly, may come dangerously close to a denial of

due process. The Court should therefore be alert to possible prejudice caused by the procedures employed, and be somewhat liberal in re-examining its own actions in order, ultimately, to achieve with dispatch the purposes of the Bankruptcy Code. For all of these reasons, the Court will exercise its discretion and order that the default Order dated November 6, 1985, granting the Debtor's motion to avoid lien, will be opened and Signal shall be allowed into a defense.

### 2. The Merits of the Motion to Avoid Lien

■ The issue on the merits of the Debtor's Motion is whether a mobile home is a household good as that term is employed in 11 U.S.C. § 522(f)(2)(A). That section provides:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(2) a non-possessory, non-purchase money security interest in any—(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor.

*In re Abt,* 2 B.R. 323 (Bkrcy.E.D.Pa.1980) and a line of cases succeeding it, squarely hold that an automobile is not a household good and therefore a lien thereon may not be avoided under § 522(f)(2)(A). The reasoning is persuasive and applicable here. At page 326, Judge Goldhaber states:

> It is abundantly clear to us that the specific inclusion of the debtor's interest in a motor vehicle in § 522(d)(2), and the omission of any mention of a motor vehicle in § 522(f) reflects the Congressional intent and negates the debtor's argument that his motor vehicle should be treated as part of his household goods.

Likewise, Congress provided for debtors to take an exemption in "real property or personal property" used as a residence at § 522(d)(1). Had Congress intended that real or personal property used as a residence should be included in the lien avoidance provisions of § 522(f)(2)(A), it could have and would have said so.

A mobile home is plainly within the meaning of "real property or personal property" used as a residence. And just as plainly, a mobile home is *not* contemplated by the words "household furnishings, household goods, wearing apparel...." Congress did not intend for debtors to avoid liens on property used as a residence under § 522(f)(2) and we find accordingly. To find otherwise would do violence to the plain meaning of the words of the statute.

Debtor relies on the case of *In re DiPalma,* 24 B.R. 385 (Bkrcy.Mass.1982). As applied here, the *DiPalma* case is dicta and not controlling.

The mobile home lien there was invalid because it was not perfected and the court order did not avoid that lien under § 522(f)(2)(A) as we are requested to do here. In *DiPalma,* the mobile home was allowed to the debtor as exempt property, but there never was a perfected lien which was avoided by the court. The court did, however, in its well reasoned analysis of the various interrelated Bankruptcy Code provisions, conclude that the mobile home could be allowed to the debtor as exempt property but only if it were "household furnishings, household goods" under § 522(f)(2)(A). While that finding was a necessary element to the granting of the mobile home to the debtor as exempt property, that court nevertheless did not void an otherwise valid lien. The court there was making a decision on the distribution of assets which were already a part of the estate, and it was not making a decision on the avoidance of a lien. The net result of the *DiPalma* decision was: (1) as between the unperfected lienor and the trustee, the trustee wins, and (2) as between the debtor and unsecured creditors, the debtor wins. We have different facts and a different

issue before us. We do not regard *DiPalma* as requiring us to void a lien which is valid and perfected.

The Debtor's Motion to avoid the lien of Signal will therefore be refused.